# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SPENCER SHANNON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 12-1179-CV-W-FJG |
| MICHAEL T. WEAKLEY, | ) ) ) |
| Defendant. | ) ) |

## ORDER

Currently pending before the Court is defendant Michael Weakley's Motion for Summary Judgment (Doc. # 44).

## I.  BACKGROUND

On Saturday, September 10, 2011, plaintiff Spencer Shannon was at a neighbor's house with friends.  Later that evening, Mr. Shannon drove himself and five passengers in his utility vehicle to his home which was a half-mile away from his neighbor's house.  At some point during the drive, one of the passengers, Brett Warner fell out of the utility vehicle.  After Mr. Warner fell, the others discussed whether to call an ambulance or whether Mr. Shannon should drive the utility vehicle to his house and drive back in his truck to take Mr. Warner to the hospital.  Mr. Shannon decided to go get his truck and take Mr. Warner to the hospital.  However, when Mr. Shannon returned to the scene of the accident, he learned that an ambulance had been called and it was no longer necessary for him to drive Mr. Warner to the hospital.  Mr. Shannon decided to return home and phone his wife so that she could accompany him to the hospital. Mr. Shannon also phoned his mother to ask her to come over to baby-sit

his children.  Mr. Shannon's mother and step-father, Leah and Allen Eiserer arrived at plaintiff's home shortly thereafter.  After talking with his mother and step-father, plaintiff decided to shower, change clothes and rest in his bedroom before going to the hospital.  Plaintiff's mother and step-father decided to wait on the porch for plaintiff's wife and children to return home.

After the accident occurred, Trooper Weakley was called to investigate.  After speaking with witnesses, Trooper Weakley tentatively identified a person named Shannon as the driver who had left the scene.  Trooper Weakley, along with two sheriff's deputies, drove to plaintiff's residence and saw tire tracks leading into the driveway appearing to match the type of vehicle that was involved in the accident.  Upon arrival, Trooper Weakley approached the front porch of plaintiff's house and told the Eiserers that he needed to speak with Mr. Shannon.  When Trooper Weakley asked if he could enter the home to talk with Mr. Shannon, Mrs. Eiserer stated, "[T]his is not our house.  I'm his mother."  Mrs. Eiserer then walked into the house through the front door, closing the storm door, but leaving the interior door open and sat down on the couch.  Trooper Weakley then continued to talk with Mr. Eiserer and reiterated that he wanted to talk with Mr. Shannon.  Mr. Eiserer told Trooper Weakley that Mr. Shannon was upstairs in bed and that if he wanted to talk to him, Trooper Weakley would have to get a search warrant.  Trooper Weakley responded that if he had to leave to get a warrant, no one would be allowed to enter or leave and the sheriff's deputies would block the driveway.  He also informed Mr. Eiserer that last time he had gotten a warrant on a weekend, it had taken five hours.  Mr. Eiserer then turned and walked into the house.  Trooper Weakley and the two sheriff's deputies followed him into the house.

Mr. Eiserer walked up two or three steps leading to the home's upper level and called out saying, "Spencer, you know, there's some policemen here or officers here to talk to you." (Allen Eiserer Depo., p.19). Mr. Shannon responded "okay." (Shannon Depo. p. 29). Trooper Weakley and the deputies then stepped past Mr. Eiserer and continued up the stairs and into Mr. Shannon's bedroom. In the bedroom, Trooper Weakley confirmed Mr. Shannon's identity and that he had been driving the utility vehicle. Trooper Weakley then arrested Mr. Shannon for leaving the scene of a motor vehicle accident. Trooper Weakley handcuffed plaintiff and escorted him out of the house and drove him to the Carroll County Sheriff's Office, where he conducted three field sobriety tests. After plaintiff passed the field sobriety tests, he was returned home by one of the Sheriff's deputies.

On August 24, 2012, plaintiff filed a petition in Carroll County Circuit Court. The case was removed to federal court on September 14, 2012. Plaintiff filed a Second Amended Complaint on May 3, 2013, alleging illegal entry and search of plaintiff's home (Count II), illegal arrest (Count III) and false imprisonment and false arrest (Count IV). Plaintiff had initially named the two Sheriff's deputies in his Complaint, but plaintiff subsequently dismissed his claims against defendants Southard and Rhodes, on June 18, 2013.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

### III. DISCUSSION

Trooper Weakley argues that Mr. Eiserer validly consented to his initial entry into the Shannon home. Weakley argues that consent may be obtained from a third party who has apparent authority to give consent. Trooper Weakley states that he knew that Mr. Eiserer was Mr. Shannon's stepfather and that Mr. Eiserer had permission to freely enter the home without asking for permission. Weakley also states that Mr. Eiserer allowed him entry to the home and did not object or tell him to leave. Weakley also argues that he did not coerce or threaten Mr. Eiserer in order to obtain his consent. Weakley also argues that Mr. Shannon consented to his continuing presence in his home, because he did not tell Weakley and the Sheriff's deputies to leave or stay downstairs. Weakley also argues that probable cause supports Mr. Shannon's arrest

4

and defeats his claims of false arrest and false imprisonment.

Plaintiff argues that qualified immunity does not shield Weakley from liability because his conduct was not reasonable in light of the clearly established law. Plaintiff states that even if Weakley arguably obtained consent from Mr. Eiserer, this consent was coerced. Plaintiff also argues that even if consent was given to enter the home, no one gave Weakley consent to walk up the stairs and into plaintiff's bedroom.

After reviewing defendant's motion for summary judgment and plaintiff's response, the Court finds that there are disputed issues of material fact which prevent the Court from granting summary judgment. Accordingly, the Court hereby **DENIES** defendant's Motion for Summary Judgment (Doc. #44).

## IV. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** defendant's Motion for Summary Judgment (Doc. # 44).

Date: <u>November 18, 2013</u>　　　　　　　　　**S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge